The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Duane Fred SCHNEIDER,
Defendant–Appellee.

No. 97CA2185.

Colorado Court of Appeals,
Div. V.

March 18, 1999.

Rehearing Denied
April 22, 1999.*

Certiorari Granted Jan. 18, 2000.

* BRIGGS, J., would GRANT.

During a two-day hearing on the motion, the victim, then eighteen, testified that she had lied and that the defendant had never sexually abused her. Following the hearing, the trial court issued a written order granting defendant permission to withdraw his *Alford* plea. This appeal followed.

## I.

■ The People contend that the record and the law do not support the trial court's setting aside of the conviction. They assert that, because defendant entered a voluntary, knowing, and intelligent guilty plea, he waived his right to withdraw his plea after sentencing, even though the victim later recanted. They also assert that the trial court misapplied a newly discovered evidence standard in the Crim. P. 35(c) motion. In contrast, defendant contends that a request to withdraw an *Alford* plea should be permitted, even after sentencing, and that a victim's recantation constitutes newly discovered evidence sufficient to permit the plea to be withdrawn. We conclude that a defendant should be permitted, even after sentencing, to seek withdrawal of an *Alford* plea based on newly discovered evidence.

Crim. P. 35(c)(2)(V) provides that an application for conviction review must allege, *inter alia:*

> That there exists evidence of material facts, not theretofore presented and heard, which, by the exercise of reasonable diligence, could not have been known to or learned by the defendant or his attorney prior to the submission of the issues to the court or jury, and which requires vacation of the conviction or sentence in the interest of justice.

■ In essence, an *Alford* plea permits a defendant to assert innocence as to one or more elements of the crime. Nevertheless, because sufficient evidence exists for a conviction, the defendant consents to the imposition of the conviction and penalty. *People v. Birdsong,* 958 P.2d 1124 (Colo.1998).

A division of this court recently concluded in *People v. Tomey,* 969 P.2d 785 (Colo.App. 1998), that a defendant who enters an *Alford*

David J. Thomas, District Attorney, Donna Skinner Reed, Chief Appellate Deputy District Attorney, Golden, Colorado, for Plaintiff–Appellant

Maureen O'Brien, Lakewood, Colorado, for Defendant–Appellee

Opinion by Judge MARQUEZ.

The People appeal the trial court's order granting the request of defendant, Duane Fred Schneider, to withdraw his guilty plea based on newly discovered evidence. We affirm.

In 1993, defendant was charged with four counts of aggravated incest involving his then thirteen-year-old daughter. Pursuant to a plea agreement, defendant entered a guilty plea in 1994 to sexual assault on a child in accordance with *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

In 1996, defendant filed a Crim. P. 35(c) motion to withdraw his guilty plea. The motion was based in part on the "newly discovered" evidence that the victim had recanted.

plea of guilty does *not* waive the right to seek post-conviction review, at least when the request is based on newly discovered evidence.

Citing *People v. Gutierrez*, 622 P.2d 547 (Colo.1981), the division in *Tomey* observed that to succeed on a motion for a new trial based on newly discovered evidence, the defendant must show that the evidence was discovered after the trial; defendant and defense counsel exercised diligence to discover all possible evidence favorable to the defendant before and during trial; the newly discovered evidence is material to the issues involved and not merely cumulative or impeaching; and such evidence would probably bring about an acquittal verdict if presented at another trial.

The determination of the character of the new evidence in regard to its likelihood of producing an acquittal in a new trial should be premised on whether the new evidence, when considered with all the other evidence presented at a new trial, is such that a reasonable jury would probably conclude that there existed a reasonable doubt as to defendant's guilt and thereby bring about an acquittal verdict. *People v. Tomey, supra.*

In the Crim. P. 35(c) proceedings in this case, counsel disagreed as to the proper criteria to be applied but did not provide the trial court any legal authority, other than the supreme court's decision in *People v. Gutierrez, supra.*

The trial court determined that it would apply the *Gutierrez* test to defendant's request to withdraw his plea. It concluded that: the recantation evidence was discovered after entry of his guilty plea; defendant and his counsel had exercised diligence to discover all possible evidence favorable to defendant prior to the plea; the evidence was material; there was no obvious flaw in either story; and the recantation would probably cause a reasonable jury to have reasonable doubt about the defendant's guilt.

On appeal, the parties have cited no legal authority other than *Gutierrez*. Nor does either party advocate the adoption of any other standard. While *Gutierrez* involved a motion for new trial, not a request

to withdraw an *Alford* plea, and the "newly discovered" evidence in *Gutierrez* was not a victim's recantation, we nevertheless agree that *Gutierrez* is the applicable standard.

In *People v. Tomey, supra,* as here, defendant, after entering an *Alford* plea, sought post-conviction relief pursuant to Crim. P. 35(c). Defendant alleged that while in jail after sentencing, he was informed by another inmate that the victim had told the inmate she had lied about being attacked by defendant. The division held defendant was entitled to file a motion for post-conviction relief.

In *People v. Estep,* 799 P.2d 405 (Colo.App. 1990), defendant appealed the denial of his Crim. P. 35(c) motion seeking a new trial based on the confession of another to the crime for which defendant had been convicted by a jury. The trial court denied defendant's motion on the basis that defendant was not credible. Citing *People v. Gutierrez, supra,* a division of this court held that the determination as to whether the new evidence would probably produce an acquittal in a new trial is not to be based on the court's experience in evaluating the credibility of witnesses. Rather, that determination should be premised on whether the new evidence, as developed in a trial and considered with all the other evidence, is such that a reasonable jury would probably conclude that there existed a reasonable doubt as to defendant's guilt and thereby bring about an acquittal verdict.

While courts in other jurisdictions have addressed the question of recantation, virtually all cases have involved recantation following a trial. *See, e.g., United States v. Leibowitz,* 919 F.2d 482 (7th Cir.1990).

Very few cases have addressed the issue in the context of an *Alford* plea. *See State v. Miller,* 253 Mont. 395, 833 P.2d 1040 (1992)(applying abuse of discretion standard and ruling that a new trial is required only when the court is satisfied that the recantation is true); *People v. De Jesus,* 606 N.Y.S.2d 255, 199 A.D.2d 529 (N.Y.App.Div.1993)(disagreeing with hearing court that testimony regarding child victim's recantation was unworthy of belief, court held interest of justice would be best served

by permitting the defendant to withdraw his plea and proceed to trial).

In *State v. McCallum*, 208 Wis.2d 463, 561 N.W.2d 707 (1997), the court applied a test similar to *Gutierrez*. Although Wisconsin employs an additional requirement of corroboration, the court held that the correct legal standard includes whether there is a reasonable probability that a jury, looking at both the accusation and recantation, would have a reasonable doubt as to the defendant's guilt.

Here, the only difference between *People v. Tomey, supra,* and the present case is that the recantation is by the victim of an alleged sexual assault. In our view, this does not warrant a departure from *Tomey* and *Gutierrez*. Accordingly, we conclude that the trial court properly applied *Gutierrez*.

## II.

We also reject the People's contention that the record does not support the trial court's ruling.

Here, the trial court addressed each of the *Gutierrez* elements. The evidence of recantation was discovered in 1996 after defendant had entered his *Alford* plea. The court found, with record support, that the victim first contacted her mother and the court claiming that she had lied regarding her sexual allegations against her father. At the hearing in 1997, she testified that she had lied about her earlier allegation.

The court specifically found, with record support, that no pressure was placed on the victim by the defendant to compel her to come forward and recant. At the hearing, she was specifically asked, "[A]re you saying that you lied now because you missed your dad?" She responded, "No I lied — I lied then, I lied about — I mean I just lied." She testified that defendant had not sexually abused her and that no one had asked her to come and say that. When asked if defendant had asked her to tell the court she had lied, she answered, "No I haven't talked to him."

The court also noted there had not been any serious argument that defendant and his counsel failed to exercise diligence to discover all possible evidence favorable to the defendant prior to the plea. This was supported by a finding that investigators prior to trial had interviewed the victim and that she was still alleging the assaults had occurred.

In addition, the court found there was no doubt that the daughter's recantation evidence was material to the issues involved. In this regard, the record of the plea hearing indicates that the factual basis asserted was that defendant had touched the victim's breasts. That record does not indicate the source of that information.

Finally, the court concluded that the recantation should be sufficient to cause a reasonable jury to conclude that there exists a reasonable doubt as to defendant's guilt. In support, the court noted that defendant had not previously admitted his guilt and that the victim had not previously testified under oath at trial. Thus, according to the court, an acquittal would depend on the jury's determination of the victim's credibility.

Thus, the record adequately supports the trial court's findings and conclusions. *See People v. Tomey, supra; People v. Estep, supra.*

Order affirmed.

Judge TAUBMAN concurs.

Judge BRIGGS dissents.

Judge BRIGGS dissenting.

I agree that a defendant has the right to request permission to withdraw an *Alford* plea when the alleged victim of domestic sexual abuse recants. However, I disagree with the additional position the majority takes that when, as here, a court finds only that there are "no obvious flaws" in either the initial accusations or the later recantation, the convicted sex abuser is entitled to a new trial. Because recantations by victims of domestic sexual abuse are inherently unreliable, I would require, before permitting a defendant to withdraw an *Alford* plea, that the court must be reasonably satisfied that the earlier accusations were actually false.

Here, it cannot be determined from the order permitting defendant to withdraw his *Alford* plea whether he satisfied this burden of persuasion. I would therefore vacate the

court's order and remand for further findings.

### I.

Crim. P. 32(d) provides that a defendant may withdraw a plea of guilty or nolo contendere only before sentence is imposed or imposition of sentence is suspended. The rule is the counterpart of Fed.R.Crim.P. 32(d). However, when adopting the state rule, the supreme court intentionally deleted that part of the federal rule providing that a guilty plea can be withdrawn after sentencing, if necessary to correct manifest injustice. *Glaser v. People,* 155 Colo. 504, 395 P.2d 461 (1964); *see also People v. Miller,* 685 P.2d 233 (Colo.App.1984). Thus, in Colorado, so long as a guilty plea is entered knowingly, intelligently, and voluntarily, the plea may not be set aside after sentencing. *People v. Pozo,* 746 P.2d 523 (Colo.1987).

The United States Supreme Court has elaborated on the finality of a guilty plea:

> Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment....

> . . . .

> A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case....

*Brady v. United States,* 397 U.S. 742, 748, 757, 90 S.Ct. 1463, 1468, 1473, 25 L.Ed.2d 747, 756, 761 (1970).

Nevertheless, as the majority notes, a division of this court recently concluded in *People v. Tomey,* 969 P.2d 785 (Colo.App.1998), that a defendant who enters an *Alford* plea of no contest does *not* waive the right to seek post-conviction review, at least when the request is based on newly discovered evidence. The decision in *Tomey* rested on the division's construction of Crim. P. 35(c)(2). The rule provides, in pertinent part, that every person convicted of a crime is entitled to seek post-conviction review when facts exist that have not previously been presented and heard; that by the exercise of reasonable diligence could not have been known before the conviction; and that require vacation of the conviction "in the interest of justice." The decision in *Tomey* also implicitly reflects that an *Alford* plea differs sufficiently from a plea based on an admission of guilt that post-conviction review should be available, at least in the limited circumstances of newly discovered evidence.

However, the focus in *Tomey* was not on the actual criteria that, "in the interest of justice," must be satisfied for a defendant to be entitled to withdraw an *Alford* plea. Further, the case did not involve a recantation by an asserted victim of a domestic sexual assault.

The trial court here determined that it would apply the test articulated in *People v. Gutierrez,* 622 P.2d 547 (Colo.1981). However, *Gutierrez* involved a motion for new trial and a motion to withdraw a guilty plea *before* sentencing, not a request to withdraw an *Alford* plea *after* sentencing. Equally important, the "newly discovered" evidence in *Gutierrez,* as in *Tomey,* was not a recantation by an asserted victim of a domestic sexual assault.

We are therefore presented with an issue of first impression and, in the circumstances presented here, neither *Tomey* nor *Gutierrez* necessarily supplies the appropriate criteria for granting a motion to withdraw an *Alford* plea. Instead, we must independently determine those criteria. This requires that we strike a balance among the interests of the defendant, the recanting victim, and the state.

### II.

As the majority notes, few courts have addressed the criteria that must be satisfied to entitle a defendant to withdraw an *Alford* plea based on a victim's recantation. However, many have addressed the related question of the criteria for granting a new trial based on recanted testimony. Most have applied a test that, in at least one significant way, is more stringent than the *Gutierrez* test.

## A.

In the seminal case of *Larrison v. United States*, 24 F.2d 82 (7th Cir.1928), the Seventh Circuit concluded that a new trial should be granted when: 1) the court is reasonably satisfied that the initial testimony of a material witness was false; 2) without it the jury might have reached a different conclusion; and 3) the party seeking a new trial was taken by surprise when the false testimony was given and was unable to meet or did not know its falsity. Courts have generally applied this test, or some derivative of it, to recanted testimony. *See generally* T. Thomas, Annotation, *Standard For Granting or Denying New Trial in State Criminal Case on Basis Of Recanted Testimony—Modern Cases,* 77 A.L.R.4th 1031 (1990).

The most common modifications to the *Larrison* test involve its second and third criteria. As to the second, which looks to the materiality of the evidence, the typical modification is to require more than a mere "possibility" that a jury might have reached a different conclusion. Instead, the more stringent standard of "probability" is applied. *See United States v. Sinclair,* 109 F.3d 1527 (10th Cir.1997); *see generally* T. Thomas, *supra.*

The other common modification is to delete surprise as a separate criterion. *See United States v. Sinclair, supra.* This is particularly appropriate in circumstances in which, as here, the victim who accused the defendant recants. *See generally* T. Thomas, *supra.*

The one constant criterion under virtually every formulation of a test is that the trial court must itself be reasonably satisfied the challenged testimony or statements were actually false. *See United States v. Leibowitz,* 919 F.2d 482 (7th Cir.1990); *United States v. Carbone,* 880 F.2d 1500 (1st Cir.1989), *cert. denied,* 493 U.S. 1078, 110 S.Ct. 1131, 107 L.Ed.2d 1037 (1990)(threshold for granting a new trial is that the trial judge be satisfied that the testimony was perjured); *United States v. Wallace,* 528 F.2d 863 (4th Cir. 1976); *United States ex rel. Sostre v. Festa,* 513 F.2d 1313 (2d Cir.1975), *cert. denied,* 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975); *United States v. Meyers,* 484 F.2d 113 (3d Cir.1973); *Gordon v. United States,* 178 F.2d 896 (6th Cir.1949), *cert. denied,* 339 U.S. 935, 70 S.Ct. 664, 94 L.Ed. 1353 (1950); *Johnson v. State,* 36 Conn.App. 59, 647 A.2d 373 (1994); *Blankenship v. State,* 447 A.2d 428 (Del.Supr.1982); *State v. Naeole,* 62 Haw. 563, 617 P.2d 820 (1980); *State v. Fields,* 127 Idaho 904, 908 P.2d 1211 (1995); *State v. Taylor,* 287 N.W.2d 576 (Iowa 1980); *State v. Erdman,* 422 N.W.2d 511 (Minn.1988); *State v. Britt,* 320 N.C. 705, 360 S.E.2d 660 (1987); *Marshall v. State,* 305 N.W.2d 838 (S.D. 1981); *State v. Briggs,* 152 Vt. 531, 568 A.2d 779 (1989); *see also United States v. Chatman,* 994 F.2d 1510 (10th Cir.1993), cert. denied, 510 U.S. 883, 114 S.Ct. 230, 126 L.Ed.2d 185 (1993)(applying different standard but noting that the trial court must first be satisfied that the challenged testimony was actually false).

Courts have added this criterion to the test for a new trial in the circumstances of a recantation, for an important reason: recantations are "exceedingly unreliable" and are thus viewed with "suspicion." *See Mollica v. State,* 374 So.2d 1022, 1025 (Fla.App.1979); see generally T. Thomas, *supra.*

Traditional skepticism about recanted testimony increases when the witness who recants is the alleged victim of a domestic sexual assault. The victim is often subject to pressure from the defendant and other family members to recant. In these cases, recantation is a recurring phenomenon. *See United States v. Provost,* 969 F.2d 617 (8th Cir. 1992); *see also United States v. Earles,* 983 F.Supp. 1236 (N.D.Iowa 1997); *see generally* W. Habeeb, Annotation, *Recantation By Prosecuting Witness In Sex Crime As Ground For New Trial,* 51 A.L.R.3d 907 (1973).

## B.

When the alleged victim of domestic sexual abuse recants, courts should be at least as reluctant to set aside an *Alford* plea as they are to grant a new trial. While a defendant who enters an *Alford* plea has neither been found guilty nor admitted guilt, the defendant has nevertheless undertaken a risk-benefit analysis that considers the weight and quality of the evidence before entering the

plea. *See Duran v. Superior Court*, 162 Ariz. 206, 782 P.2d 324 (Ariz.App.1989); *State v. D.T.M.*, 78 Wash.App. 216, 896 P.2d 108 (1995).

When that evidence includes an accusation by an alleged victim of domestic sexual abuse, the defendant is aware of and can evaluate not only the accusation, but also the relationship with the victim and the possibility of a recantation. Thus, when the alleged victim recants, the evidence does not present the same "surprise" as does newly discovered evidence that a defendant did not even know existed. *See generally* T. Thomas, *supra.*

### C.

I therefore conclude that, when a defendant seeks to withdraw an *Alford* plea based on a recantation by an alleged victim of a domestic sexual assault, the court must be reasonably satisfied that the initial accusations were actually false. I further conclude, consistent with *Gutierrez*, that the court must also be reasonably satisfied that the testimony of the recanting witness in a new trial would probably bring about a verdict of acquittal. *See State v. Miller*, 253 Mont. 395, 833 P.2d 1040, 1041 (1992)(reaffirming adoption of the "prevailing judicial attitude that recanting testimony is to be viewed with great suspicion," and determining that a court hearing a request to withdraw an *Alford* plea should grant the request "only when the court is satisfied that the recantation is true"); *cf. State v. McCallum*, 208 Wis.2d 463, 561 N.W.2d 707 (1997); *but cf. People v. De Jesus*, 606 N.Y.S.2d 255, 199 A.D.2d 529 (N.Y.App.Div.1993).

While I generally agree with the approach taken in *State v. Miller, supra*, I would require that the court must be reasonably satisfied, not that the testimony at the Crim. P. 35(c) hearing is true, but that the initial accusations of the witness were false. This is because the witness may have been lying in at least some respects on both occasions. *See United States v. Provost*, supra.

The first prong of the test I would adopt— that the court be reasonably satisfied that the initial accusations were actually false— concerns falsity. The second prong—that the court also be reasonably satisfied that the testimony of the recanting witness in a new trial would probably bring about a verdict of acquittal—concerns materiality.

For example, a court may be reasonably satisfied that an earlier statement or testimony was false. However, because the statement or testimony concerned a tangential matter or was cumulative, the court may determine that a jury in a new trial would probably still find the defendant guilty. Conversely, a court may determine that a jury would probably return a verdict of acquittal based on a recantation, if believed, but not be reasonably satisfied that the earlier statement or testimony was false. *See generally* T. Thomas, *supra.* In either case, the defendant would not be entitled to withdraw an *Alford* plea.

### 1.

The focus of this test is on whether the earlier accusation was false rather than whether the recantation was true. Nevertheless, a court hearing the post-conviction request in fact cannot avoid considering the credibility of the recanting witness at the Crim. P. 35(c) hearing:

> The real question [as to credibility], we suppose, is not whether the district judge believed the recantation, but how likely the district judge thought a jury at a second trial would be to believe it. The finding that the witness is not credible, however, at least in the context of this case, appears to us to cover both these bases. Indeed, if a district court does not believe a witness, it seems most unlikely that the same court would find the witness sufficiently persuasive to enable the court to say the witness's testimony would probably produce an acquittal at a new trial.

See *United States v. Earles, supra*, 983 F.Supp. at 1250; see also *United States v. Grey Bear*, 116 F.3d 349 (8th Cir. 1997). Thus, the credibility of the recanting witness is a key to determining both whether the court is reasonably satisfied that the earlier accusations were actually false and whether the testimony of the witness at a trial would probably bring about a verdict of acquittal. *See United States v. Earles, supra*; see also

*United States v. Provost, supra* (probability that a recantation would lead to acquittal rests in large part on the credibility of the recantation); *United States v. Chatman, supra* (the trial court must ordinarily hold an evidentiary hearing to determine the credibility and effect of the recantation).

In reaching this conclusion, I need not determine whether I agree with the conclusion reached in *People v. Estep*, 799 P.2d 405 (Colo.App.1990). In that case, a division of this court applied the *Gutierrez* test to determine whether a defendant convicted after trial was entitled to a new trial based on a later confession by an inmate on death row. The trial court denied the motion, based on its assessment that the witness who confessed was not credible.

The *Estep* division, in reversing the court's denial of a new trial, concluded that "the determination of the character of the new evidence to probably produce an acquittal in a new trial is not to be based on the court's experience in evaluating the credibility of witnesses." *See People v. Estep, supra*, 799 P.2d at 407. However, the evidence in question in *Estep* was not a victim's recantation. As already discussed, recantations are different from other forms of newly discovered evidence. I conclude here only that, in applying the appropriate test in the unique circumstances of a victim's recantation, the trial court must necessarily consider the credibility of the recanting witness at the Crim. P. 35(c) hearing. To the extent this conclusion is contrary to the holding in *People v. Tomey, supra*, I would decline to follow it.

2.

Finally, I recognize that, when the judgment of conviction results from an *Alford* plea, the trial court may not be able to make a comparison of the credibility of the witness at trial and at the Crim. P. 35(c) hearing. This is because the recanting witness, as here, may not have earlier testified under oath, at least not at trial. The same problem is presented even with a motion for new trial, when a different judge presides at the Crim. P. 35(c) hearing than presided at the initial trial.

In such circumstances, the court still must determine whether it is reasonably satisfied the earlier accusations were false, based on the totality of the circumstances. In addition to considering the credibility of the witness when recanting under oath, the trial court may consider the circumstances surrounding the earlier accusations. For example, the court may consider any motive to fabricate the initial accusation; observations by witnesses of the recanting witness when making the accusations; the nature and detail of both the accusations and the recantation; and whether the accusations were made under oath.

In sum, I would require that, before granting a motion to withdraw an *Alford* plea based on a recantation by the alleged victim of domestic sexual abuse, the court must be reasonably satisfied that the initial accusation was actually false and that a trial would probably result in a verdict of acquittal. In making its determination, the trial court must necessarily take into consideration the victim's credibility at the Crim. P. 35(c) hearing.

III.

The trial court here did not have the benefit of what I consider the appropriate test in reaching its conclusion that a new trial was required. If this test were to be applied to the trial court's findings, further findings would be necessary.

As earlier noted, the trial court found "no obvious flaw" in either version of the story provided by the alleged victim. In applying the *Gutierrez* test, the court determined that the recantation was sufficient to cause a reasonable jury to conclude that there exists a reasonable doubt as to defendant's guilt of the crime to which he entered his *Alford* plea.

However, because it applied the *Gutierrez* test, the court made no finding that it was reasonably satisfied the earlier statements by the recanting witness were actually false. Further, it is not clear from the trial court's order whether it made its own evaluation of the credibility of the recanting witness at the Crim. P. 35(c) hearing or, instead, merely

determined that the testimony would cause a reasonable jury to conclude that there exists a reasonable doubt as to defendant's guilt, *if believed* by the jury.

This presents a greater concern here because the court's order nowhere even mentions the substantial testimony presented at the Crim. P. 35(c) hearing. This included testimony by the witnesses to the victim's earlier accusations, in which they described the detailed nature of the victim's accusations and, without objection, their observations concerning the victim's credibility. It also included testimony, again without objection, that defendant had failed a lie detector test before entering his plea. Finally, it included the testimony of an investigating officer that defendant had said he "didn't think" he had committed the crimes charged but, if proved, he would "get help." Defendant had also admitted having "extreme" marital difficulties, and he had discussed with the officer some of his "sexual fantasies" about both daughters.

In sum, it can equally be inferred from the court's order that it found a new trial would probably result in an acquittal, *if* a jury believed the victim's recantation. Such a finding should be insufficient to permit withdrawal of an *Alford* plea based on a recantation by an alleged victim of domestic sexual abuse.

I would therefore remand for further findings and application of what I consider the appropriate test for permitting such an *Alford* plea to be withdrawn. *See United States v. Chatman, supra* (appellate court must be able to discern from the record whether and how the trial court evaluated the credibility of the recanting witness).

It is a miscarriage of justice for an innocent family member to be wrongly accused and convicted of abusing a child. It is no less a miscarriage of justice for an innocent child to be subjected to domestic abuse and then coerced, however subtly, into recanting. For such a child, the abuse has never stopped.